UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADRIAN GARCIA MARQUEZ,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ et al.,<br>Respondents. | CASE NO. 2:26-cv-02516-JNW<br>ORDER |

This matter comes before the Court on Petitioner Adrian Garcia Marquez's petition for a writ of habeas corpus and request for injunctive relief. Dkt. No. 1. He argues that his bond hearing was constitutionally deficient and that his continued detention violates due process. The Court GRANTS the petition, orders Garcia Marquez released, and GRANTS in part his request for injunctive relief.

## 1. BACKGROUND

On June 18, 2026, the Honorable Tiffany M. Cartwright ordered that Garcia Marquez be released or given a bond hearing under 8 U.S.C. § 1226(a), based on his membership in the bond-denial class certified in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), *aff'd sub nom*. *Rodriguez Vazquez v. Bostock*,

183 F.4th 1160 (9th Cir. 2026). *Tovar Rodriguez v. Hernandez*, No. 2:26-CV-02067-TMC, 2026 WL 1758654, at *2 (W.D. Wash. June 18, 2026).

On June 30, 2026, an immigration judge ("IJ") held that hearing and denied bond. Dkt. No. 3 at 11. The IJ's written decision is a one-page form. She checked boxes for "Danger/Flight Risk," "Conditional release is: denied," and "Ability to pay considered," but wrote nothing to explain the ruling. *Id.* Her oral ruling added little. She said only that, "given all the evidence presented then, the court is going to find that given [Garcia Marquez's] lack of follow through on his immigration status and his failure to comply with the laws and the nature of the offenses," he is "a danger and a flight risk" and denied bond. Dkt. No. 3 at 21. Garcia Marquez reserved appeal but did not ultimately appeal the decision to the Board of Immigration Appeals (BIA). *Id.* at 12.

Garcia Marquez is a 34-year-old citizen of Mexico. Dkt. No. 2 ¶ 4. He came to the United States with his parents at nine months old and has lived here ever since. *Id.* He grew up in Phoenix, Arizona and relocated to Tacoma, Washington around 2008. *Id.* Before his detention, he lived in Renton, Washington with his U.S. citizen wife and their three U.S. citizen daughters, ages six, four, and two. *Id.* ¶ 6. He supports the family through his concrete business, Majestic Concrete LLC, which he started in 2022. *Id.* ¶ 7.

United States Citizenship and Immigration Services (USCIS) approved Garcia Marquez's first DACA application on January 9, 2014. USCIS renewed his DACA status in 2016, 2018, 2020, and 2022. Garcia Marquez's DACA status lapsed

on February 3, 2025, when he forgot to petition for renewal. ICE arrested him on May 26, 2026. Dkt. No. 2 ¶ 3.

Garcia Marquez's criminal history consists of driving infractions that occurred over seven years ago.[1] Specifically, Garcia Marquez was convicted of reckless driving on September 5, 2014. Dkt. No. 11-1 at 4. On October 20, 2019, he was arrested and charged with "Driving with a Suspended or Revoked-1 License," and third-degree attempted assault. *Id.* The court ultimately dismissed those charges and imposed anger management treatment. *Id.* He has had no contact with the criminal justice system since. *Id.*

## 2. LEGAL STANDARDS

### 2.1 Habeas relief.

Federal courts can grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody,"

[1] Respondents also state that "[o]n December 14, 2012, the Tacoma Municipal Court convicted Petitioner of one count of Hit and Run of an Attended Vehicle and one count of Operating a Motor Vehicle without Insurance . . . Available records do not confirm whether the charges were ultimately dismissed." Dkt. No. 9 at 3. But it is undisputed that this information was not before the IJ when she made her bond decision. *See* Dkt. No. 3 at 14–17. The Court agrees with Petitioner that it cannot be considered when reviewing the IJ's decision.

and thus to warrant relief, a petitioner must demonstrate that their detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**2.2 Other equitable relief.**

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying the permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

## 3. DISCUSSION

### 3.1 The Court has jurisdiction to review Garcia Marquez's bond decision.

Federal courts have jurisdiction to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011); *see Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases). "The application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact," which is reviewable by courts. *Wilkinson v. Garland,* 601 U.S. 209, 212 (2024). A bond denial due to community danger or flight risk is such a mixed question, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

### 3.2 The Court waives the prudential exhaustion requirement.

Respondents argue that Garcia Marquez had to appeal to the BIA before seeking habeas relief. In immigration habeas cases, though, administrative exhaustion is prudential, not jurisdictional. *See W.T.M. v. Bondi*, No. 25-cv-2428, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)). Prudential exhaustion is favored when "(1)

agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

None of those conditions favor exhaustion here. Garcia Marquez raises a constitutional challenge to the adequacy of his bond hearing, a claim well suited for federal court review. *Singh*, 638 F.3d at 1203 n.3. Respondents say a BIA appeal "would create a complete administrative record." Dkt. No. 9 at 8. But whether the facts can sustain a finding of flight risk or danger is a legal question that requires no agency expertise regardless of whether or not Garcia Marquez appealed. *See Fletes-Velasquez v. Hernandez*, No. C26-1908 TSZ, 2026 WL 1871890, at *2 (W.D. Wash. June 30, 2026) ("because petitioner challenges the constitutional adequacy of a bond hearing ordered by the Court, prudential exhaustion does not apply or is excused or waived" despite petitioner's choice not to appeal). And requiring an appeal would not conserve resources or let the agency fix its own error; it would add months of detention while the appeal is pending. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025); *W.T.M.*, 2026 WL 262583, at *2.

Even if the *Puga* factors required exhaustion, the Court would waive the requirement because irreparable injury would result. A court may waive prudential exhaustion where (i) the administrative remedies are "inadequate or not efficacious," (ii) "pursuit of administrative remedies would be a futile gesture," (iii) "irreparable injury" might result, or (iv) "the administrative proceedings would be

void." *See Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)). Garcia Marquez's ongoing detention—imposed without an adequate bond hearing—is itself an irreparable injury, and Respondents do not dispute his account of it. *See Hernandez*, 872 F.3d at 995–96.

Accordingly, the Court waives any exhaustion requirement.

### 3.3 The IJ's bond denial was an abuse of discretion.

Habeas courts review an IJ's bond determination for abuse of discretion. *Martinez*, 124 F.4th at 784–85. The Court may decide whether the IJ applied the correct legal standard, but it may not reweigh the evidence. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (in reviewing discretionary bond determinations, federal district courts are "not required to countenance a sham").

In making bond determinations, IJs consider the *Guerra* factors:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Numerous courts in this Circuit have found due process violations where IJs abuse their discretion in bond determinations.[2]

Many of the *Guerra* factors favor Garcia Marquez. On this record, the IJ's findings of danger to the community and flight risk cannot be sustained. Garcia Marquez has over three decades of continuous, stable residency in the United States, a fixed address in Washington, a local business, strong community ties, and three young American citizen children who rely on him for financial and emotional support. There is no evidence that Garcia Marquez has a negative record of appearance in court or that he has attempted to flee prosecution or escape authorities. He will apply for ten-year cancellation of removal, giving him a strong incentive to appear for future proceedings. Dkt. No. 3 at 20.

The IJ appears to cite Garcia Marquez's immigration and criminal history as her rationale for finding both danger to the community and flight risk—she lists "his lack of follow through on his immigration status" and "his failure to comply with the laws and the nature of the offenses." But until 2022, Garcia Marquez had a long history of renewing his DACA status. And although a noncitizen's criminal record is relevant in a bond assessment, "the recency and severity of the offenses

---

[2] *See e.g.*, *W.T.M. v. Bondi*, 2026 WL 262583, at *3–4; *Soriano v. Hernandez*, 2026 WL 969764, at *4–6 (W.D. Wash. Apr. 10, 2026); *Zambrano-Vazquez v. Noem*, No. 26-cv-122-RSM, 2026 WL 657129, at *4 (W.D. Wash. Mar. 9, 2026); *Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *6–7 (S.D. Cal. Apr. 16, 2026); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004–05 (N.D. Cal. 2018); *Garcia v. Hyde*, 2025 WL 3466312, at *7–11 (D.R.I. Dec. 3, 2025); Garcia Ortiz, 2026 WL 948275, at *3–4.

must be considered." *Singh*, 638 F.3d at 1206. "[E]vidence of criminal conduct grows less powerful as it becomes less current[.]" *Aguirre-Urbina v. Wilcox,* No. C18-1743 TSZ, 2019 WL 2161644, at *1 (W.D. Wash. May 17, 2019) (citation omitted). And "not every criminal record would support a finding of dangerousness." *Singh*, 638 F.3d at 1206 (citing *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008)).

One reckless driving conviction from over twelve years ago cannot sustain a finding of danger to the community and flight risk. And the IJ's decision does not explain how that offense outweighs the evidence of Garcia Marquez's good character and community ties. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d at 1004–05 (concluding IJ abused their discretion in denying bond based on pending criminal charge that, without more, did not serve as "probative and specific" evidence of criminal activity).

The record does not show that the IJ applied the *Guerra* factors to the facts before her. Although she asked about Garcia Marquez's family and his history, her decision does not engage with the extensive evidence his counsel presented—his marriage certificate, his children's Social Security numbers, income tax records, business records, and letters of support from family and friends in his community. Dkt. No. 12 at 7. An IJ must meaningfully engage with contrary evidence, and failure to do so is an abuse of discretion. *See, e.g.*, *Soto Gimenez v. Hernandez,* No. 2:26-cv-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion); *Miri v. Bondi,* No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *8–

9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond); *Garcia v. Hyde*, 2025 WL 3466312, at *10 (abuse of discretion to disregard contrary evidence submitted by petitioner that his arrest warrant was inactive).

The IJ's bond denial does not rationally apply the governing legal standard to the facts and evidence here. No reasonable adjudicator could conclude on this record that Garcia Marquez poses a flight risk and danger to the community. Respondents argue that Garcia Marquez "has not shown that the [IJ] applied an incorrect legal standard or that the decision lacks a reasonable foundation under *Guerra*[.]" Dkt. No. 9 at 7. But Respondents can't show that the IJ meaningfully engaged with contrary evidence—she never addresses any of the positive equities clearly relevant under *Guerra.* The IJ's decision was thus an abuse of discretion, and Garcia Marquez's continued detention violates due process.

### 3.4 The appropriate remedy is immediate release.

Having found that the IJ's decision to deny bond was an abuse of discretion, the Court must determine the appropriate remedy. "Federal courts have a fair amount of flexibility" in fashioning habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). The Court could order another bond hearing, but it declines to do so. Garcia Marquez has already had one hearing, ordered by this Court. Ordering another would merely prolong his detention without justification.

Where, as here, a noncitizen detained under § 1226(a) is not found to be a flight risk or danger to the community, there is no lawful basis for continued

detention. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (ordering immediate release where continued custody did not serve an immigration purpose after IJ abused their discretion in finding that petitioner posed a flight risk and danger to the community); *W.T.M.*, 2026 WL 262583, at *5 (ordering immediate release due to process violations in bond hearing); *Soriano*, 2026 WL 969764, at *6 (finding same). Accordingly, the Court orders Garcia Marquez's immediate release.

### 3.5 The Court grants in part Garcia Marquez's request for injunctive relief.

Beyond release, Garcia Marquez asks the Court to permanently enjoin his re-detention "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. No. 1 at 16. Respondents argue that injunctive relief is premature because there is no history of re-detention in this case from which a risk of recurrence can be inferred. Dkt. No. 9 at 9. Garcia Marquez does not address Respondents' argument in his traverse. *See* Dkt. No. 12.

Once Respondents release Garcia Marquez in accordance with this Order, he will have a strong liberty interest in not being re-detained, even though his release will be conditional. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026) (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (collecting cases)). Respondents must follow the law if they re-detain Garcia Marquez after his release; due process

requires pre-deprivation process before revoking a noncitizen's release and re-detaining them. *Id.*

Respondents do not disagree—they argue only that because Garcia Marquez was never detained, released, and re-detained without due process, there has been no recurrent violation from which the Court can infer a "cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Respondents' point is well-taken, but the Court finds it likely that Garcia Marquez will be subject to this form of due process violation. Despite courts repeatedly finding re-detention without pre-deprivation process unconstitutional, Respondents have not changed their conduct. *See, e.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *Garcia Radillo v. Scott*, No. 2:26-cv-02357-JHC, 2026 WL 2168044, at *4 (W.D. Wash. July 28, 2026); *Pablo v. ICE Field Off. Dir.*, No. 2:26-cv-01197-JHC, 2026 WL 2098018, at *5–6 (W.D. Wash. July 21, 2026); *Victoriano v. Mullin*, No. 2:26-cv-00886-RAJ, 2026 WL 1194596, at *8 (W.D. Wash. May 1, 2026); *Soto v. Bondi*, No. 2:26-cv-00652-BAT, 2026 WL 972731, at *7 (W.D. Wash. Apr. 10, 2026); *Medero v. Hermosillo*, No. C26-0568JLR, 2026 WL 891355, at *3 (W.D. Wash. Apr. 1, 2026); *Gomez Candelo v. Noem*, No. 2:26-cv-00576-JNW, 2026 WL 879049, at *3–4 (W.D. Wash. Mar. 31, 2026); *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *5 (W.D. Wash. Mar. 31, 2026); *Sing Uppal v. Noem*, No. 2:26-cv-00711-RAJ, 2026 WL 864682, at *3

(W.D. Wash. Mar. 30, 2026); *Husen v. Noem*, No. 2:26-cv-00498-JHC, 2026 WL 632365, at *5 (W.D. Wash. Mar. 6, 2026); *Arrega Morales De Putul v. Hermosillo*, No. 2:26-cv-00129-GJL, 2026 WL 468637, at *2 n.1 (W.D. Wash. Feb. 19, 2026) (collecting cases); *Teweldemedhin v. Noem*, No. C25-2363JLR, 2026 WL 172029, at *4–5 (W.D. Wash. Jan. 22, 2026); *Todd v. Bondi*, No. 25-cv-02519-JHC, 2026 WL 145725, at *6 (W.D. Wash. Jan. 20, 2026); *Manuel v. Hermosillo*, No. C25-2353-TL-MLP, 2025 WL 3690778, at *2–4 (W.D. Wash. Dec. 10, 2025); *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 25, 2025) (collecting cases); *Dejesus v. Bostock*, No. 25-cv-01427-JHC-TLF, 2025 WL 3268002, at *4 (W.D. Wash. Nov. 24, 2025). Because it is well known in this District that ICE revokes noncitizens' release and detains them without process, Garcia Marquez shows a "cognizable danger of recurrent violation."[3]

The balance of hardships also favors Garcia Marquez, as the injunction requires only that Respondents comply with due process before re-detaining him.

[3] Garcia Marquez asks the Court to take judicial notice of "the number of re-detention cases where judges in this [D]istrict have granted habeas corpus petitions finding that re-detention requires procedural safeguards pursuant to the Due Process clause[.]" Dkt. No. 1 ¶ 45. But he does not identify the number of cases or explain how this figure could be readily discernable. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be questioned."). Garcia Marquez states, "there are approximately 953 active pending habeas petitions in this district." *Id.* ¶ 41. But not all habeas cases pending in this District involve immigration detention after release and the Court has no way of knowing how many are granted on that basis. Garcia Marquez's request for judicial notice is denied.

And the public interest is served by an order prohibiting Respondents from violating the Due Process Clause.

Garcia Marquez asks the Court to go further and require Respondents to prove, by clear and convincing evidence, that he is a flight risk or a danger to the community at any future re-detention hearing. Many district courts, including this one, have imposed that requirement when a petitioner's "initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Espinoza Palacios*, 2026 WL 686138, at *11 (quoting *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025)); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034, 1038 (N.D. Cal. 2025). When an individual is released under those criteria, courts have found that the released individual "has a strong interest in remaining at liberty unless [they] no longer meet those criteria," and that their release "constitute[s] an 'implied promise' that [their] liberty w[ill] not be revoked unless [they] 'fail[] to live up to the conditions of [their] release.'" *Pinchi*, 792 F. Supp. 3d at 1034 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

But Garcia Marquez is in a slightly different position. He is entitled to release because this Court found that the IJ's bond decision was an abuse of discretion, and that his continued detention therefore violates due process. Specifically, the Court found that "[n]o reasonable adjudicator could conclude on this record that Garcia Marquez poses a flight risk and danger to the community." It's not clear to the Court that this scenario matches those in which the government releases a noncitizen on bond after finding they do not pose a danger to the

community or a flight risk. The distinction is subtle, but Garcia Marquez does not address it. The Court cannot grant his request when he has provided no support or argument for this condition.

## 4. CONCLUSION

Accordingly, the Court ORDERS the following:

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. Respondents must release Petitioner from custody within TWENTY-FOUR (24) hours of this Order.
3. Respondents must file a status update within FORTY-EIGHT (48) hours of this Order, confirming that Petitioner has been released from custody.
4. Petitioner's request for injunctive relief is GRANTED IN PART. Petitioner may not be re-detained without at least SEVEN (7) days' advance written notice and a pre-deprivation hearing before a neutral decisionmaker.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 8th day of September, 2026.

Jamal N. Whitehead
United States District Judge